IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JAMES H. HOYT                                              CV 06-6288-MA

            Plaintiff,                         OPINION AND ORDER

   v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,


            Defendant.

   KATHRYN TASSINARI
   DREW L. JOHNSON
   1700 Valley River Drive, First Floor
   Eugene, OR  97401

       Attorneys for Plaintiff

   KARIN J. IMMERGUT
   United States Attorney
   NEIL J. EVANS
   Assistant United States Attorney
   1000 S.W. Third Avenue, Suite 600
   Portland, OR  97204-2902

   STEPHANIE R. MARTZ
   Special Assistant United States Attorney
   Social Security Administration
   701 5th Avenue, Suite 2900 M/S 901
   Seattle, WA  98104-7075

       Attorneys for Defendant

MARSH, J:


Page -1- OPINION AND ORDER

The matter before the court is plaintiff, James H. Hoyt's, Social Security complaint (#1), seeking review of the final decision of the Commissioner of Social Security, denying his application for disability insurance benefits (DIB), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This court has jurisdiction under 42 U.S.C. § 405(g). For the reasons that follow, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

## BACKGROUND

Hoyt filed for DIB on September 17, 2003, alleging that he became disabled on June 1, 2003, due to post traumatic stress disorder (PTSD). He completed high school and worked in the past as a millwright, machinist, and logger. Prior to filing for DIB, Hoyt last worked in May 2003. Hoyt has insured status through December 2008[1]. Born on November 10, 1948, Hoyt was 55 years old at the time he filed for DIB.

Hoyt's application was denied initially, and upon reconsideration. An Administrative Law Judge (ALJ) held a hearing on November 9, 2005, at which Hoyt testified, and was represented by an attorney. On July 27, 2006 the ALJ issued a written decision, denying Hoyt's application. On October 17,

---

[1] In order to be eligible for disability insurance benefits under Title II of the Social Security Act, a plaintiff must show that he was disabled during the period of time he was last insured.

Page -2- OPINION AND ORDER

2006, the Appeals Council denied Hoyt's request for review, making the ALJ's decision the Commissioner's final decision.

On appeal to this court, Hoyt contends the ALJ erred by: (1) failing to provide clear and convincing reasons for rejecting the opinion of psychologist Daniel Golletz, Ph.D.; (2) failing to give "proper consideration" to the opinion of program staff at the Roseberg Veteran's Administration (VA) inpatient treatment program for Post Traumatic Stress Disorder (PTSD); (3) failing to credit the lay witness testimony of Hoyt's wife, Pamela Hoyt; (4) failing to credit Hoyt's VA benefits award; and, (5) failing to provide clear and convincing reasons for discounting Hoyt's subjective complaints.  Hoyt's arguments will be discussed, below, in the order they arise under the Commissioner's five-step sequential evaluation.

## STANDARD OF REVIEW

The initial burden of proof rests on the claimant to establish disability.  <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id</u>.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. <u>Andrews</u>, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001).

### **DISABILITY ANALYSIS**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. See <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at step one, the ALJ found Hoyt had not engaged in substantial gainful activity since his alleged onset date of disability.  See 20 C.F.R. § 404.1520(b).  At step two he found Hoyt had the following severe impairments: PTSD, bilateral (by history) degenerative joint disease of the knees, and history of substance abuse.  See 20 C.F.R. § 404.1520(c).  At step three the ALJ found that Hoyt's impairments did not meet or equal the requirements of any listed impairment.  See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

The ALJ assessed Hoyt with a residual functional capacity (RFC) for "medium" exertional level work, requiring lifting no more than 50 pounds, with the additional limitation that he not have contact with the general public.  See 20 C.F.R. §§ 404.1520(e), 404.1545.

At step four the ALJ found that Hoyt could perform his past relevant work as a machinist, as this job is generally performed in the national economy.  See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f).

At step five, the ALJ found that Hoyt could also perform a significant number of jobs in the national economy, such as sweeper/ cleaner, production line welder, and bench assembler.  See 20 C.F.R. §§ 404.1520(a)(4) (v), 404.1520(g).  Accordingly, the ALJ found that Hoyt was not disabled.

**DISCUSSION**

I.  **The ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Hoyt's subjective reports.**

   A.  **Standards**

In assessing a claimant's credibility the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for truthfulness, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication.  See Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).

   B.  **Analysis**

The ALJ found less than fully credible Hoyt's testimony that he is unable to work because of nervousness, anger, intrusive thoughts, concentration deficits, difficulty getting along with people, a history of altercations and legal difficulties, and exaggerated startle responses to noise.  He cited a number of clear and convincing reasons for this finding.

Page -6- OPINION AND ORDER

First, the ALJ noted that Hoyt stopped working because he was laid off, not due to his alleged mental impairments. The absence of a corresponding deterioration in functioning around the time of Hoyt's alleged onset of disability was appropriately considered by the ALJ. See Bruton v. Massanari, 268 F. 3d 824, 828 (9th Cir. 2001)(fact claimant did not stop working due to an allegedly disabling impairment, but was laid off, weighs against claimant's credibility).

Second, the ALJ noted that Hoyt testified he believed he was prohibited from working per VA policies, which the ALJ interpreted to mean that Hoyt decided not to continue to look for work after the grant of VA disability benefits of approximately $2300 per month because the benefits would be reduced if he found a new job. This was a reasonable conclusion, in light of Hoyt's own testimony that his allegedly disabling mental impairments have plagued him for most of his working life, but have not prevented him from working until he was found to have a "service-connected" disability by the VA.

Third, the ALJ found that Hoyt's "pattern of self-terminating mental health counseling and avoiding medication treatment is not consistent with claims of disability." The ALJ noted that Hoyt only took medication for anxiety and depression for a few weeks before stopping for "unspecified reasons." Hoyt also quit the inpatient PTSD treatment program at the Roseburg

VA, stating that "no further therapy will do me any good."  The ALJ noted that this contention was contrary to Dr. Golletz' belief that continued treatment would "likely lead to further improvements."  The ALJ reasonably concluded from this record that Hoyt's mental problems were not as severe as he claimed.  See Burch v. Barnhart, 400 F. 3d 676, 681 (9th Cir. 2005)(lack of treatment for mental condition is a legitimate credibility factor); see also 20 C.F.R. § 404.1529(c)(3)(unexplained failure to request or pursue a prescription for serious medical treatment or pain medication is "an important indicator of the intensity and persistence of [the claimant's] symptoms.").

 Fourth, the ALJ found Hoyt's earnings record, which showed that Hoyt has worked for approximately 16 employers over a 15 year period, contradicted his testimony that he had held over 30 jobs.  Further, the ALJ found Hoyt's contention to the VA, that he had been fired from fifty percent of these jobs, was inconsistent with his testimony to the ALJ that he had been fired from "probably all of them."  The ALJ also noted that in Hoyt's line of work it is normal to work for several different outfits for shorter durations.  The ALJ properly construed Hoyt's prior inconsistent statements as evidence of dishonesty.

 Fifth, the ALJ found Hoyt's testimony about his military service, and specifically about his time in Vietnam, to be exaggerated.  Hoyt testified that even though he was a helicopter

mechanic, and was not in a combat brigade, he developed PTSD because he volunteered as a door gunner on 30 air missions. The ALJ noted that this was not reflected in Hoyt's military service record. Hoyt argues that ALJ improperly based his finding that Hoyt's reports about his military service were not fully credible on his personal knowledge from serving in Vietnam. However, Hoyt's military record does not reflect any combat service, so even if it was improper for the ALJ to interject personal knowledge regarding the awarding of "air medals" for this type of service, still the record supports the ALJ's reasonable conclusion that Hoyt exaggerated the nature of his service in Vietnam. See Reddick v. Chater, 157 F.3d 715 (9th Cir. 1998)(proper for ALJ to consider the inconsistency between a claimant's ADLs and the degree of disability alleged).

Finally, the ALJ found some of Hoyt's activities of daily living (ADLs) to be inconsistent with his subjective reports. For instance, the ALJ noted that "Although [Hoyt] asserted that he was very disturbed by noises, the sound of gunfire while target shooting does not appear to bother him." The ALJ also noted that Hoyt is able to communicate and coordinate with the Oregon Department of Fish and Game, for whom he volunteers on wildlife courier and counting missions several times a year. Hoyt argues that his ability to perform physical work, such as the day-long drives entailed in his volunteer work, is not

inconsistent with his alleged mental impairments.  However, it was reasonable for the ALJ to find Hoyt's ability to engage in these types of endeavors to be inconsistent with his allegations of disabling nervousness and lack of concentration.

Having thoroughly reviewed the record in this case, I find substantial evidence to support the preceding clear and convincing reasons provided by the ALJ for finding Hoyt to be less than fully credible.

**II. The ALJ provided clear and convincing reasons, supported by substantial evidence, for discrediting Dr. Golletz' opinion that Hoyt was disabled.**

    **A.   Standards**

The ALJ is responsible for resolving conflicts and ambiguities in medical evidence.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 1999).  The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting the opinion of a claimant's physician when it is not contradicted by another doctor.  See Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).  If a treating physician's opinion is contradicted by another doctor, the Commissioner may reject it by providing "specific and legitimate reasons" supported by substantial evidence in the record.  Id. at 600-601.

The Commissioner weighs the opinion of a treating physician by considering the following factors: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree of supporting explanations and evidence, (4) consistency with the record as a whole, (5) whether the physician specializes in the medical issue about which he opines, and (6) other evidence such as whether the physician is familiar with the claimant's case record.  20 C.F.R. § 416.927(d).

**B.  Analysis**

On April 11, 2003, less than one month before Hoyt allegedly became disabled, Daniel Golletz, Ph.D., performed a psychological evaluation of Hoyt.  He told Dr. Golletz his "primary problem" was uncontrolled anger and associated verbal abuse toward his wife.  He also reported "recurring problems at his current place of employment including periodic anger outbursts, difficulty handling stress, problems with concentration, and poor relations with coworkers.  Hoyt attributed this history to the "combat trauma" he allegedly suffered in Vietnam.  Dr. Gollezt noted, however, that Hoyt did not identify any specific traumatic events, and displayed "body language" indicating to Dr. Golletz that further inquiry into Hoyt's experience in Vietnam "would provoke intense anger."  As a result of Dr. Golletz' inability to obtain data from Hoyt on this topic, one of the tests Dr. Golletz

Page -11- OPINION AND ORDER

planned to administer called the "Combat Exposure Scale," was invalid. However, other testing was consistent with a diagnosis of combat-related PTSD. Accordingly, Dr. Golletz diagnosed Hoyt with PTSD and alcohol dependence.

Dr. Golletz concluded that Hoyt's treatment needs were "extensive" and that successful treatment "is likely to be a lengthy undertaking" with the highest treatment priorities being "anger/ aggression and alcohol dependance." He stated that Hoyt needed group therapy, which could not begin until he stopped drinking excessively.

Dr. Golletz proceeded to see Hoyt "regularly for therapy." Soon thereafter, Hoyt began receiving VA disability benefits and "additional benefits" from the Department of Veterans Affairs. On February 13, 2004, Dr. Golletz opined that Hoyt was "functionally unemployable due to PTSD...for the foreseeable future." On May 11, 2004, Dr. Golletz reported that Hoyt's condition remained unchanged, but had stabilized since he discontinued working.

At Dr. Golletz' recommendation, Hoyt attended an inpatient treatment program for PTSD at the Roseburg VA from May 10, 2004 until June 9, 2004. However, treatment notes indicate that the program was not a success. For example, the discharge note states, *inter alia*:

> Immediate and ongoing impediments to Mr. Hoyt's
> participation in or benefitting from the SIPU treatment

>     regime were his well entrenched and defended
>     narcissistically oriented beliefs and accompanying
>     intellectual rigidity.  In light of this the presence of
>     PTSD, or its component elements if present, was not able to
>     be addressed during the course of this veteran's SIPU stay.

In July 2004 Hoyt "unilaterally discontinued" his treatment with Dr. Golletz.

The ALJ credited Dr. Golletz' diagnoses, but partially discredited his opinions about Hoyt's inability to work, for a number of clear and convincing reasons.  First, the ALJ noted that Dr. Golletz substantially credited Hoyt's subjective statements, and relied on unsubstantiated information, such as that Hoyt experienced combat in Vietnam, in formulating his prognosis.  Hoyt argues that Dr. Golletz did not rely solely on Hoyt's subjective reports, he also relied on test results to diagnose PTSD and its attendant limitations.  However, the tests primarily rely on Hoyt's subjective reporting, and in any event, the mere diagnosis of an impairment does not equate to disability.  See Mathews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).  Having concluded, above, that the ALJ properly discredited Hoyt's subjective reports, I find that the ALJ reasonably also determined that medical opinions premised on Hoyt's subjective reports were not wholly reliable.

Second, the ALJ found that Dr. Golletz' conclusion that Hoyt could no longer work was based primarily on his difficulty working with others and focusing on complex or detailed tasks;

limitations that do not automatically equate with disability under the Act. In any event, Dr. Golletz was not qualified to render vocational opinions, only medical opinions. See 20 C.F.R. § 404.1527(d)(2); SSR 96-5p.

Third, the ALJ found that Hoyt's long work history and activities of daily living were inconsistent with Dr. Golletz' conclusion that Hoyt's symptoms would preclude employment. I find this conclusion reasonable in light of the fact Hoyt reportedly suffered from his mental impairments all his life, yet had a long work history. See Morgan v. Commissioner, 169 F.3d 595, 601-02 (9th Cir. 1999)(ALJ may reject a physician's assessment of a claimant's limitations if actual activities conflict with assessment). Notwithstanding his reports of consistent confrontations with co-workers, there is not any evidence in the record that Hoyt was ever terminated as a result of such problems, or because of his alleged inability to concentrate. His claimed lack of concentration is also belied, to a degree, by reports to therapists that when he gets motivated to work he will often work 16 hours uninterrupted. Hoyt argues that these were not the only limitations Dr. Golletz assessed; he also has difficulty responding appropriately to supervision. Yet, despite this long-running limitation Hoyt worked under supervision for years.

Accordingly, I do not find any error in the ALJ's assessment of Dr. Golletz' opinion.

### III. Given Hoyt's unreliable testimony, the ALJ properly considered the significance to the VA disability rating.

#### A. Standards

Generally, the Commissioner must give "great weight" to the VA's disability rating of a veteran because of the marked similarity between the two federal disability programs. <u>McCartey v. Massanari,</u> 298 F. 3d 1072, 1076 (9th Cir. 2002); *see also* 38 C.F.R. § 4.1 *et seq*. However, because the criteria used by these programs for evaluating disability are not identical, the Commissioner may give less weight to a VA disability rating by providing "persuasive, specific, valid reasons for doing so that are supported by the record." <u>McCartey</u>, 298 F. 3d at 1076.

#### B. Analysis

In this case, the VA determined that Hoyt was 70% disabled due to his PTSD, and therefore awarded him VA disability benefits. For all the reasons that the ALJ found Hoyt less than fully credible, stated above, the ALJ did not afford the VA determination great weight.

The ALJ reviewed the VA's August 14, 2003 decision and found that, like Dr. Golletz, the VA largely credited Hoyt's subjective reports without substantiating evidence. Based on Hoyt's

Page -15- OPINION AND ORDER

documented "propensity to exaggerate" the ALJ was not persuaded that the VA disability determination was accurate.  I find these reasons to be persuasive, specific and valid.

**IV.  The ALJ properly evaluated the lay witness opinions of Hoyt's wife and the Nurse Practitioner at the Roseburg VA PTSD treatment program.**

   A.   Standards

   Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence which the ALJ must take into account, "unless he expressly determined to disregard such testimony, in which case 'he must give reasons that are germane to each witness'".  See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)(citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

   However, testimony about the causes of a claimant's medical problems, such as that the claimant has a serious mental impairment as the result of a stroke, is beyond the competence of a lay witness and therefore does not constitute competent evidence.  Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984); cf. Nguyen,100 F.3d at 1467 (distinguishing lay witness testimony about a claimant's symptoms from testimony involving medical conclusions or diagnoses).

**B.   Analysis**

In this case, the record contains information provided by two lay witnesses: Hoyt's wife, Pamela Hoyt, and a mental health Nurse Practitioner at the Roseburg VA Hospital, Ann Sedlacek.

Pamela Hoyt testified that Hoyt had problems getting along with neighbors, coworkers, family members and authority figures. She indicated that Hoyt had trouble completing the paperwork involved in his disability benefits applications, and that he had a very short attention span.  The ALJ stated that he gave this report a "fair amount" of weight.  However, Hoyt argues that the ALJ failed to credit Ms. Hoyt's statements.  I do not find any merit to this argument, as Ms. Hoyt's statements did not specifically address Hoyt's ability to work.  The ALJ generally credited Hoyt's reports that he had a lot of trouble getting along with people.  However, he noted that in spite of these challenges, Hoyt was rehired multiple times by the same employers, and was able to work for many years.  Therefore, the ALJ did not err in his evaluation of Pamela Hoyt's testimony.

As a nurse practitioner, Ann Sedlacek is not an "acceptable medical source" within the meaning of the regulations.  20 C.F.R. § 404.1513.  Therefore, the ALJ properly evaluated her June 2004 opinion as a lay witness opinion, despite the fact she stated that it was the "consensus" of Hoyt's treatment team.  Ms.

Sedlacek opined that Hoyt "may not reasonably be expected to sustain employment for the foreseeable future" and that employment "is a predicable and contributing factor in the worsening of his psychiatric condition." Ms. Sedlacek also stated that she believed Hoyt would not likely benefit from further outpatient treatment. The ALJ found these statements inconsistent with the treatment notes from his 30-day inpatient treatment program, which stated that Hoyt's PTSD was never even addressed during that stay, but that on the whole Hoyt did a good job interacting with the group and participating in activities. This was a germane reason to reject a lay witness opinion.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 15_ day of August, 2007.

                                                /s/ Malcolm F. Marsh
                                                Malcolm F. Marsh
                                                United States District Court Judge